IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA M. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09-cv-4596 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| MAN 2 MEN USA, CORPORATION, | ) | |
| PALM USA, INC. d/b/a CITY SPORTS, | ) | |
| and ROSELAND FASHION & | ) | |
| SPORTSWEAR INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

From 2003 to 2006, Plaintiff Rhonda Jones worked at Man 2 Men, a men's clothing boutique. Man 2 Men was in a seven-store mini mall that also contained City Sports. Plaintiff alleges that a manager of City Sports sexually harassed her and then had her terminated from Man 2 Men in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Illinois Human Rights Act, 775 ILCS 5/2-101. *et seq.* Plaintiff asserts claims for race discrimination, sexual harassment, and retaliation under both statutes. Before the Court is Defendant City Sports' motion for summary judgment [103], which maintains that a reasonable jury could not conclude that City Sports was Plaintiff's employer for the purposes of Title VII. For the reasons stated below, the Court agrees and grants Defendant City Sports' motion for summary judgment [103]. Furthermore, as demonstrated by the parties' supplemental briefing, Defendant Man 2 Men did not have enough employees to qualify as an employer for purposes of Title VII, and therefore Plaintiff's Title VII claims against Defendants Man 2 Men (and, by extension, Roseland Fashion & Sportswear) are dismissed. The Court dismisses Plaintiff's state law claims without prejudice to Plaintiff's right to refile those claims in state court.

I.      Background

From approximately 2003 to 2006, Plaintiff Rhonda Jones, an African-American woman, worked at a clothing boutique, Man 2 Men, selling men's suits, dress clothing, and shoes. Man 2 Men is a corporation solely owned by Andrew Bae, which has no shareholders, directors or officers other than Bae. Bae operated two Man 2 Men stores, and, except for a couple of occasions, Plaintiff worked at the Man 2 Men store located at 6535 S. Halsted in Chicago.

City Sports operated a store in the same mini mall as Man 2 Men. Plaintiff claims that Bo Han, a City Sports employee, began sexually harassing her in April of 2005. She also testified that in 2006 Bo Han said that he was going to have her "black ass" fired, and, two days later, Bo Han had a conversation with Bae, after which Bae terminated Plaintiff. At the time of Plaintiff's termination, Bae was six months behind in rent and he had previously told his employees that he would need to close the store. According to Plaintiff, Bae "terminated Plaintiff's employment because the Man 2 Men store was in financial trouble, his brother-in-law was not happy with the money he invested in the store, and he could not afford to pay Ms. Jones." Plaintiff also testified that Han spoke with Bae on the same day that Bae fired Plaintiff. Plaintiff does not know what Han and Bae discussed, and Bae testified that he did not discuss Plaintiff's termination with Han prior to or after Plaintiff's termination. Additionally, prior to her termination, Plaintiff never complained to Bae about Han's allegedly harassing treatment, and Bae was not aware of any harassment.

Man 2 Men closed approximately six to eight months after Bae terminated Plaintiff. Because Man 2 Men no longer exists, Plaintiff also has sued Roseland Fashion & Sportswear, Inc. as a successor in interest. Bae has not associated with City Sports since he closed Man 2 Men.

2

### A. Man 2 Men's Employees

The work schedule for Man 2 Men employees changed every week. Bae's mother would draft the schedule and post it on the wall. City Sports' employees or ownership did not have any input into creating Man 2 Men's work schedule. Plaintiff, who was paid cash daily, typically worked five days per week from 10 a.m. to 7 p.m. In the original summary judgment briefing, Defendant maintained that "[t]hroughout the life of Man 2 Men, Andrew Bae only had about three or four employees." Plaintiff denied the statement, and claimed that Andrew Bae had more than three or four employees through the life of Man 2 Men, including Andrew Bae, Amy Bae, Angie Bae, Yoo Jin Bae, Jin Soo Han, Meeka, Vonnie, Vonnie's nephew, Quincy, Rashad and an older gentleman." The Court asked the parties to supplement their arguments about whether Man 2 Men satisfied Title VII's numeracy requirement. Plaintiff responded that "the full record now reflects that Man 2 Man's employees include but are not limited to: Andrew Bae, Amy Bae, Angie Bae, Yoo Jin Bae, Jin Soo Han, Meeka, Vonnie, Vonnie's nephew, Quincy, Rashad, Luando Morris, Leslie, two unknown male employees, and Plaintiff herself."

### B. Relationship between Man 2 Men and City Sports

Man 2 Men store was located in a mini mall. There were two entrances, seven different shops, and a gate that separated each store from the mall common area. Man 2 Men and City Sports each had their own signs within the mall and did not share any space within the mall other than the common area. Man 2 Men had a lease with and paid rent to Palm Realty from October 1, 2003, through September 30, 2008. Palm Realty is an affiliated company of Palm USA, Inc., an Illinois corporation that owns and operates Palm USA Inc. d/b/a City Sports ("City Sports"). City Sports sells sports clothing and related merchandise for men, women, and children. City Sports also had a lease with Palm Realty Company. James Song, Wan Lee, and Roy Kim are the

only officers, directors, and shareholders of Palm USA. None of the owners of City Sports have ever been an officer or shareholder of Man 2 Men and vice versa.

Bo Han was in charge of City Sports' day-to-day operations. In addition to his managerial duties at City Sports, Han was responsible for collecting rent on behalf of Palm Realty, performing certain maintenance in the mall, and overseeing security. Bae would contact Palm Realty through Han if there were maintenance issues. Han would then contact Palm Realty, who would deal with the issues. Additionally, Plaintiff testified that Man 2 Men employees went to Han when they needed light bulbs, soap, or toilet paper for the bathrooms, or paper for the fax machines or cash registers. Han also would tell Man 2 Men employees to turn down the radio or put things in order when, for example, boxes could be seen from outside or when a mannequin was dressed in out-of-season clothing. Plaintiff further testified that on occasion Han would enter Man 2 Men and instruct employees to end their lunch breaks. On at least two occasions, Han opened Man 2 Men's gate for other employees when Plaintiff did not arrive at work on time to open the gate. With respect to security issues, Plaintiff testified that Bae instructed Plaintiff to go to Han if customers at Man 2 Men were causing problems. Plaintiff did so on at least one occasion when one of her coworkers was pepper sprayed during an altercation at Man 2 Men. Bo Han also hosted social events in the mall's common spaces when City Sports and Man 2 Men had high sales days. Further, Plaintiff testified that "a couple of times" in three years she gave Man 2 Men's daily earnings and sales report to Bo Han to pass along to Bae when Plaintiff could not transfer the money directly to Bae or the other Man 2 Men store.

According to Plaintiff, she believed that Man 2 Men and City Sports were a family business. Jin Soo Han,[1] City Sports' general manager and Andrew Bae's brother-in-law,[2] gave Plaintiff a gold chain for stopping a robbery in the mall and, in December 2005, paid Plaintiff and another Man 2 Men employee $500 Christmas bonuses. Plaintiff also testified that Jin Soo Han often told Plaintiff that she was doing a good job.[3] Plaintiff also received a discount when shopping at City Sports. Further, Plaintiff testified that she occasionally worked at City Sports when Man 2 Men was slow or when a City Sports' employee would ask her to help put together an outfit for a customer; however, Bae never instructed Plaintiff to do so. Plaintiff admitted that she was not compensated by City Sports for this time; rather, she was paid daily in cash by Bae's mother or his sister, Amy. If Bae's mother or Amy were not at Man 2 Men at the end of Plaintiff's shift, a City Sports manager named Jiffy would give Plaintiff an envelope containing her daily wages.

In 2006, Jin Soo Han loaned Bae $10,000, which Plaintiff believed to be an investment in Man 2 Men. However, Jin Soo Han testified that while he and his wife loaned Andrew Bae $10,000, they never invested in Man 2 Men, contributed any capital to Man 2 Men, or gave Man 2 Men any goods, equipment, or supplies. Rather, Jin Soo Han testified that the $10,000 loan was a personal loan to a family member who was having financial difficulty. The record is

---

[1] Plaintiff mistakenly believed that Bo Han was Jin Soo Han's nephew, but in fact Bo Han and Jin Soo Han are not related.

[2] Jin Soo Han's wife Angie is Andrew Bae's sister. Jin Soo Han worked at Palm USA, Inc.'s headquarters at 1201 N. Milwaukee in Chicago, not at 6535 S. Halsted. His job duties included supervising managers of retail locations owned by Palm USA, reviewing each store's performance, and managing inventory. There is no evidence that Jin Soo Han ever worked for Man 2 Men. Angie Bae occasionally helped her brother at Man 2 Men during busy times, such as Christmas Eve.

[3] Jin Soo Han denies that he ever gave Plaintiff gifts or bonuses or praised her work, but at summary judgment, the Court construes all factual disputes in favor of the non-moving party. Therefore, at this stage, the Court credits Plaintiff's testimony that she received a gold chain, $500, and praise from Jin Soo Han.

undisputed that, either before or after the loan, Bae never gave Jin Soo Han or Bo Han the authority to supervise, manage, control, or direct any of Man 2 Men's employees. The record also is undisputed that Jin Soo Han did not set Plaintiff's work schedule, hours, or pay. Plaintiff admits that Bae never instructed any Man 2 Men employees to assist City Sports, and Bae was not aware of any City Sports' employee assisting Man 2 Men. And, as previously indicated, Plaintiff did not tell Bae or Jin Soo Han of the sexual harassment prior to her termination, and Bae or Jin Soo Han was not otherwise made aware of any harassment. With respect to Han, he never received any compensation from Man 2 Men.

## II. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be

6

evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.,* 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id.*

### III. Discussion

Plaintiff has sued her former (and formal) employer, Man 2 Men, as well as City Sports for the harassment and discrimination that she allegedly suffered at the hands of Bo Han. Her only federal claims are under Title VII, and Defendant City Sports claims that it does not qualify as an employer for purposes of the federal statute.

#### A. Liability of City Sports

"[O]nly the employee's employer * * * may be held liable under Title VII." *Robinson v. Sappington,* 351 F.3d 317, 332 n. 9 (7th Cir. 2003). It is undisputed that Plaintiff was a formal employee of Man 2 Men. Accordingly, City Sports can be liable on Plaintiff's discrimination, harassment, and retaliation claims only if it also was Plaintiff's employer. Even though Man 2 Men officially employed Plaintiff and City Sports did not, Plaintiff maintains that City Sports should be considered Plaintiff's joint employer, de facto, or indirect employer or should

7

otherwise be held liable under a theory of "single employer liability." Although Plaintiff advances each of these theories independently, the legal analysis focuses on the same factors.

An affiliated corporation may be considered an employer under Title VII, in addition to the direct employer, if the affiliate "directed the discriminatory act, practice, or policy of which the employee is complaining." See *Worth v. Tyer,* 276 F.3d 249, 260 (7th Cir. 2001); see also *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 941 (7th Cir. 1999) (looking to whether the parent corporation had "directed the discriminatory act"); *EEOC v. Illinois,* 69 F.3d at 169 (acknowledging that a defendant may be a "de facto or indirect employer" of the plaintiff so far as it "controlled the plaintiff's employment relationship"); *Daniel v. Sargent & Lundy, LLC*, 2012 WL 874419, at *4 (N.D. Ill. Mar. 14, 2012) (citing *Kerr v. WGN Cont'l Broad. Co.,* 229 F. Supp.2 d 880, 886 (N.D. Ill. 2002) (To be a de facto employer, an entity must be "so extensively involved with the plaintiff's day to day employment that [it] is the 'real' employer for all intents and purposes, including Title VII liability."). Courts apply a common law test based on agency principles to determine whether a defendant is an employer of the plaintiff. *Hojnacki v. Klein–Acosta,* 285 F.3d 544, 549 (7th Cir. 2002) (determining whether plaintiff was an employee of the Illinois Department of Corrections for the purposes of due process claim).

> The test requires [a court] to consider five factors: (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job. Of these factors, the extent of control and supervision over the worker is the most significant in determining the employment status.

*Id.* at 550–51 (citations omitted); see also *Teamsters Local Unions Nos. 75 & 200 v. Barry Trucking, Inc.,* 176 F.3d 1004, 1008 (7th Cir. 1999) (quoting *DiMucci Constr. Co. v. NLRB,* 24 F.3d 949, 952 (7th Cir.1994) (noting that factors to be considered include (1) supervision of

8

employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; and (4) issuance of work assignments); *Lowe v. Wolin-Levin, Inc.*, 2004 WL 1534115, at *2 (N.D. Ill. July 6, 2004). In *Heinemeier v. Chemetco, Inc.,* the Seventh Circuit directed district courts to look to the "economic realities" of the employment relationship, as well as "the degree of control the employer exercises," to determine whether an entity may be considered an employer for the purposes of Title VII liability. *Id.* at 1082–83; see also *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1008–09 (7th Cir. 2004). Guided by all of these considerations, the Court turns to the record in this case.

Here, viewing the record in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could not conclude that City Sports was a joint or de facto employer of Plaintiff. First, the record presented by the parties does not support an inference that City Sports and Man 2 Men have a parent-subsidiary relationship. They were separately-owned businesses without common owners, directors, or shareholders. Andrew Bae was the sole owner and operator of Man 2 Men. Man 2 Men and City Sports each had their own signs within the mall and did not share any space within the mall other than the common area. Man 2 Men had a lease with and paid rent to Palm Realty for five years, and City Sports had a separate, longer lease. None of the owners of City Sports has ever been an officer or shareholder of Man 2 Men and vice versa.

Plaintiff attempts to paint Man 2 Men and City Sports as affiliated entities because employees of the different stores spent a lot of time together and at times helped each other out and because the owner of Man 2 Men and the general manager of City Sports were related by marriage. Attending social gatherings in the mall's common space, receiving discounts to purchase merchandise at the other stores, and even helping the other store's employees with an

9

occasional customer may be a sign of a collegial relationship and cooperation between two stores in a 7-store mini mall, but it does not suggest that the stores failed to maintain their own identities. The Court's analysis might be different if Plaintiff spent a significant amount of time working at City Sports or City Sports paid her for any time she spent there, but the record does not support that version of the facts. Furthermore, a family connection, without more, does not make Man 2 Men a subsidiary of City Sports. Although the connection yielded a $10,000 loan from Jin Soo Han to Andrew Bae, a personal loan to a family member is not enough to join the two companies in a parent-subsidiary relationship. See also *In re APPA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 245 (3d Cir. 2008) (finding no de facto exercise of control where affiliated company made loans to an employer and shared administrative functions with the employer, but the affiliated company "played no role in [the employer's] decision to close its facilities"). This is particularly true here because Jin Soo Han does not have any ownership interest in Palm USA, Inc.; he is merely an employee of City Sports and thus his personal financial decisions do not bind Palm USA d/b/a City Sports. Lower courts applying Seventh Circuit precedent have looked to "traditional indicia of corporate affiliation, such as commonality of shareholders [and] integration of operations, to see if companies should be considered affiliated." *EEOC v. RJB Properties, Inc.*, 857 F. Supp. 2d 727, 782 (N.D. Ill. 2012) (internal quotations omitted). Aside from Plaintiff's subjective belief that the two stores were jointly owned and managed because Bae's wife was married to the general manager of City Sports and members of the Bae family worked at both stores, the record evidence simply does not support the inference that City Sports and Man 2 Men had a corporate affiliation.

Even if a parent-subsidiary relationship does not exist between Man 2 Men and City Sports, the question remains whether City Sports may be liable under Title VII as Plaintiff's de

facto employer. "This theory of liability addresses the situation where a formal employment relationship may be absent, but the putative defendant is so extensively involved with the Plaintiff's day to day employment that the putative defendant is the 'real' employer for all intents and purposes, including Title VII liability." *Kerr v. WGN Continental Broadcasting Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002) (citing *EEOC v. State of Illinois*, 69 F.3d 167, 171-72 (7th Cir. 1995)). In other words, at some point employer X may have enough control over employer Y — in terms of pay, hiring and firing, control of employee operations — to make employees of Y the agents of employer X. In that situation, the principal could be subject to liability under Title VII. See *EEOC v. State of Illinois*, 69 F.3d at 171-72; see also *Kerr v. EGN Continental Broadcasting Co.,* 2002 WL 1477629, at *8 (N.D. Ill. July 9, 2002) ("The standards for determining when an entity is a de facto employer are unsettled, but most courts decide the issue based on the amount of control the putative employer exercises over the worker.") (citing *Morrison v. American Bd. of Psychiatry and Neurology, Inc.,* 908 F. Supp. 582, 587 (N.D. Ill. 1996) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998)).

Andrew Bae hired and terminated Plaintiff. Andrew Bae agreed to pay Plaintiff cash and did so daily. Although a City Sports employee occasionally gave Plaintiff the envelope containing her daily pay, there is no evidence that the money came from someone other than Andrew Bae. Further, Plaintiff received her work schedule from Andrew Bae, Amy Bae or Andrew Bae's mother. There is no evidence in the record that Andrew Bae gave Bo Han the authority to supervise any Man 2 Men employees, or that Jin Soo Han (Bo Han's boss) gave Bo Han that authority. Although Bo Han occasionally "bossed" Man 2 Men employees around—for instance, by telling them to end their lunch breaks—there is no evidence that Andrew Bae gave Bo Han that authority or told his employees that they needed to do what Bo Han said. Aside

11

from the fact that Han chastised Man 2 Men employees on their lunch breaks, most of Plaintiff's interactions with Bo Han were limited to matters arising out of the fact that both stores were located in the same mini mall. While the Court credits Plaintiff's testimony that Bo Han occasionally told Man 2 Men employees to turn down the store's music and clean up messes or attend to mannequins that could be seen from outside the store, those interactions were consistent with Bo Han's role with Palm Realty. His maintenance and rent-collection duties on behalf of Palm Realty related to the overall operation of the complex—it essentially made him the "super" of the mini mall—but that position did not give him specific control over Plaintiff's employment.

Similarly, the record does not support the inference that Jin Soon Han (Bo Han's supervisor) controlled the terms of Plaintiff's employment. While Jin Soo Han may have given Plaintiff two gifts (a necklace for stopping the robbery and a single, $500 Christmas "bonus") as well as some praise during the three years she worked in the mall, Jin Soo Han did not set Plaintiff's work schedule, hours, or pay, and he did not hire or fire her.[4] The record is clear that Andrew Bae made the decision to terminate Plaintiff's employment due to financial difficulties (which manifested itself in the store's demise within the year) and that Bae did not know about the alleged harassment. The only evidence that ties City Sports to Plaintiff's termination is the

---

[4] The record also is undisputed that Jin Soo Han did not know about the alleged harassment. In fact, prior to her termination, Plaintiff did not alert either her own boss (Andrew Bae) or Bo Han's boss (Jin Soo Han) to the alleged harassment, making her chances of recovery under Title VII untenable, even if City Sports was her employer. An employer may be strictly liable for harassment by a supervisor but may only be liable for a non-supervisor's harassment if the employer was negligent in controlling working conditions. See *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013) (holding that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Here, aside from Plaintiff's subject belief that Bo Han had the ability to have her fired, there simply is no evidence in the record that he acted as her supervisor or was empowered to direct the terms of her employment. Because neither Jin Soo Han nor Andrew Bae were unaware of the harassment, they could not be considered negligent in controlling Plaintiff's working conditions.

timing: Bo Han allegedly threatened Plaintiff and two days later she was fired. However, Plaintiff admits that she likely would have been fired even without Bo Han's complaint due to the well-known financial problems plaguing Man 2 Men.[5] As Plaintiff explains, "Mr. Bae terminated Plaintiff's employment because the Man 2 Men store was in financial trouble, his brother-in-law was not happy with the money he invested in the store and he could not afford to pay Ms. Jones." Pl. Resp. to Def. SMF at 6. And even assuming that Bo Han did complain to Andrew Bae about Plaintiff, that does not suggest that City Sports could fire Man 2 Men employees; at best, it suggests that Andrew Bae may have been responsive to complaints about his employees. There is nothing in the record to suggest that Andrew Bae was required to fire Plaintiff once Bo Han, as a representative of City Sports, spoke to him about her.

In sum, the evidence viewed in the light most favorable to Plaintiff does not support an inference that City Sports was a joint employer or Plaintiff's de facto employer or that it should be held liable under a theory of single employer liability.

### B. The Numeracy Requirement of Title VII and Man 2 Men's Default

In its statement of material facts, City Sports inserted a fact statement about the number of Man 2 Men employees, to which Plaintiff responded. However, in the Court's review of City Sports' summary judgment motion and associated briefing by both sides, the Court noted that City Sports did not raise the argument relating to "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" until its

---

[5] Plaintiff admitted that she had not yet had a conversation with Andrew Bae regarding Bo Han's alleged conduct as of the time that Bae terminated her employment, an assertion that severely undercuts any claim that Plaintiff was terminated in retaliation for complaint of discrimination or as a result of discrimination. "At minimum, * * * [a plaintiff] must offer evidence that would support a reasonable inference that [the decision-maker] was aware of [plaintiff's] allegations of discrimination." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715; see also *Hernandez-Martinez v. Chipotle Mexican Grill, Inc.*, 2012 WL 2721913, at *8 (N.D. Ill. July 9, 2012).

13

reply brief. Because the argument first surfaced in Defendant's reply brief, in fairness the Court gave Plaintiff an opportunity to address the issue by submitting a supplemental brief responding to Defendant's argument regarding the numeracy requirement. Having now given Plaintiff the opportunity to respond fully to Defendant's argument, the Court in its discretion concludes that Defendant did not waive the issue of Title VII's numeracy requirement and also concludes that now is the appropriate time to consider whether Man 2 Men has enough employees to be considered an employer for purposes of Title VII.

A Title VII "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person * * * ." 42 U.S.C. § 2000e(b). "The purpose [of exempting tiny employers from Title VII] is to spare very small firms from the potentially crushing expense of mastering the intricacies of antidiscrimination laws, establishing procedures to assure compliance, and defending suits when efforts at compliance fail." *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 940 (7th Cir. 1999). Defendant argues that Plaintiff conceded that Man 2 Men never had fifteen employees for twenty weeks. In its statement of material facts, Defendant stated that "[t]hroughout the life of Man 2 Men, Andrew Bae only had about three or four employees." Plaintiff denied the statement, but her list of employees still did not meet the 15-employee threshold: "Andrew Bae, Amy Bae, Angie Bae, Yoo Jin Bae, Jin Soo Han, Meeka, Vonnie, Vonnie's nephew, Quincy, Rashad and an older gentleman worked at Man 2 Men." Plaintiff listed only eleven employees—or twelve counting Plaintiff.

As set forth above, the Court then asked the parties to supplement their arguments about whether Man 2 Men satisfied Title VII's numeracy requirement. Plaintiff responded that "the full record now reflects that Man 2 Man's employees include but are not limited to: Andrew Bae,

Amy Bae, Angie Bae, Yoo Jin Bae, Jin Soo Han, Meeka, Vonnie, Vonnie's nephew, Quincy, Rashad, Luando Morris, Leslie, two unknown male employees, and Plaintiff herself." Plaintiff claims that this list creates a question of material fact as to whether Man 2 Men satisfies the numeracy requirement.

The first problem with the list set forth in Plaintiff's supplemental brief (which includes three more employees than were included in her response to City Sports' fact statement) is that it includes individuals whose employment is not supported by record evidence. Plaintiff counts Luando or "Lelando" Morris twice; by her own deposition testimony, he is one of the "two unknown male employees" and yet she also lists him by name. Furthermore, there is no evidence of an employee named "Leslie" in the record, including in Plaintiff's own deposition. And finally, the record is clear that Jin Soo Han was not an employee of Man 2 Men. Although his wife's brother owned the store and Jin Soo Han would occasionally stop by the store, he did no work while he was there and he received no compensation from Man 2 Men. Thus, even viewing the facts in the light most favorable to Plaintiff (excluding assertions for which there is no evidence), Plaintiff has failed to demonstrate that Man 2 Men meets Title VII's threshold requirement of having 15 employees.

Furthermore, even if "Leslie," Jin Soo Han, and Lelando were counted, several of the employees that Plaintiff named did not work for twenty weeks during the relevant period. For example, Plaintiff testified that Angie Bae, Andrew's sister, only came in during holidays, that Vonnie did not stay long, and that Quincy worked maybe a couple of months around Christmas. Plaintiff attempts to satisfy the numeracy requirement by counting every person who worked at Man 2 Men for any amount of time, no matter how brief, but that is not the standard. Thus, Plaintiff has not come forward with sufficient evidence to create a material dispute about

15

whether Man 2 Men employed enough people during the relevant period to count as an employer for the purposes of Title VII.

Man 2 Men (or its alleged successor, Roseland Fashion & Sportswear, Inc.) has not moved for summary judgment and in fact has not yet responded to Plaintiff's suit. The Court entered an order of default against Man 2 Men and Roseland Fashion & Sportswear on November 9, 2010. As noted above, Defendant City Sports' motion for summary judgment and Plaintiff's response raised the question of whether Man 2 Men had enough employees during the relevant period to qualify as an employer under Title VII. In an effort to resolve that issue, the Court asked for supplemental briefing from Plaintiff and Defendant City Sports regarding Man 2 Men's satisfaction of Title VII's numeracy requirement. The Court said that it would issue a ruling on all the summary judgment issues after considering the parties' submissions on that issue. As explained above, the supplemental briefs leave no question that Man 2 Men is not a proper defendant under Title VII.

Because Plaintiff was on notice that the Court was considering entering summary judgment based on Man 2 Men's satisfaction of Title VII's numeracy requirement and gave Plaintiff time to respond, the Court believes that it is appropriate to enter summary judgment in favor of Man 2 Men (and its alleged successor) on Plaintiff's Title VII claim, even though Man 2 Men has not asked the Court to do so. See Fed R. Civ. P. 56(f) (After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.); *Pactiv Corp. v. Rupert*, --- F.3d ---, 2013 WL 3944283 (7th Cir. Aug. 1, 2013) ("The norm is that judges must not take litigants by surprise. The 2010 amendment to Rule 56(f) makes this explicit"); see

also *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence"). Taking this approach, Plaintiff may proceed in state court on clearly-articulated state law claims (which, upon initial glance, do not suffer from the same defects as her Title VII claims) without awaiting the inevitable dismissal of her Title VII claims against Man 2 Men and Roseland Fashion & Sportswear due to Man 2 Men's failure to meet the numeracy requirement.[6]

### C. State Law Claims

All of Plaintiff's federal claims were brought under Title VII, but she may not pursue her Title VII claims against any of these Defendants. Having resolved her federal claims, the Court must decide whether to exercise supplemental jurisdiction over her remaining state-law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity,

---

[6] Upon entry of an order of default, the defaulting party loses its ability to contest the factual basis for the moving party's claim. See, *e.g.*, *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). In essence, the facts alleged in the complaint are deemed admitted and may not later be contested absent an order vacating the order of default. *Id.* The Court does not accept bare legal conclusions, and a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a "district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (concluding that "[g]iven the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant"). Even after entry of an order of default, a district court still must consider (1) "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (*Marshall*, 616 F.3d at 852) and (2) whether the non-defaulting party is entitled to any damages on its claim – and, if so, in what amount – for "allegations in a complaint relating to the amount of damages suffered ordinarily are not" taken as true. *United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); see also *Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1189 (7th Cir. 1986). Applying these principles to the present motion, the entry of default judgment on the Title VII claims clearly would be inappropriate, as Man 2 Men cannot be deemed an employer for Title VII purposes. Thus, there would be no legal basis for imposing Title VII liability on the part of Man 2 Men. See *Marshall*, 616 F.3d at 852; *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (district court did not abuse its discretion in denying a motion for appointment of counsel or for default judgment where the "claims were of doubtful merit"); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) (upholding denial of default judgment which was based, in part, on the "disputable merits of [the plaintiff's] claims"); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (refusal to enter default judgment and dismissal not an abuse of discretion where plaintiff's substantive claims lacked merit).

consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co., Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at *4 (N.D. Ill. Apr. 16, 2010).

In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir.1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because the case is at an early stage and substantial judicial resources have not been committed to the state law counts in Plaintiffs' complaint. *Wright,* 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law.

**IV. Conclusion**

For the reasons stated above, the Court grants Defendant City Sports' motion for summary judgment [103] and dismisses Plaintiff's federal Title VII claims against Defendant City Sports. Furthermore, as demonstrated by the parties' supplemental briefing, Defendant Man 2 Men did not have enough employees to qualify as an employer for purposes of Title VII, and therefore Plaintiff's Title VII claims against Defendant Man 2 Men (and, by extension, Defendant Roseland Fashion & Sportswear) are dismissed. Finally, the Court dismisses Plaintiff's state law claims without prejudice to Plaintiff's right to refile those claims in state court.

Dated: September 30, 2013          _____
                                   Robert M. Dow, Jr.
                                   United States District Judge